UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ERNESTINE WARD,

                                                     Plaintiff,

                                                                                                     DECISION AND ORDER

                                                                                                     08-CV-6193L

             v.

EMPIRE VISION CENTERS, INC.,




                                                     Defendant.
_____

       Plaintiff Ernestine Ward ("Ward") brings this action, *pro se,* against her former employer, Empire Vision Centers ("Empire"), alleging racial discrimination, racial and sexual harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §2000e et seq., and the New York Human Rights Law ("NYHRL"), N.Y. Exec. Law §§290 et seq., as well as age-based discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C. §621 et seq. ("ADEA") and NYHRL. Discovery is now completed, and Empire moves for summary judgment dismissing the plaintiffs' claims (Dkt. #54). For the reasons that follow, Empire's motion for summary judgment is granted, and the initial and supplemental complaints are dismissed.

## FACTUAL AND PROCEDURAL BACKGROUND

Empire is a corporation which operates walk-in vision and eye care centers. Ward was employed by Empire as an Optical Assistant at its Corning, New York store from November 27, 2006 to December 26, 2007. As an Optical Assistant, Ward's duties included greeting customers, answering phones, scheduling patient appointments and maintaining patient files, processing and verifying patient insurance information, and various other duties related to the opening, closing and maintenance of the store itself. She was hired and directly supervised by Corning store manager Sherry Ionta ("Ionta"), and later by Ionta's successor, Brian Burbank ("Burbank").

Empire describes Ward's employment as problematic. Ionta testified that she was concerned with Ward's slow performance, inability to comprehend key concepts, and constant "surveillance" of her coworkers, who complained that Ward was making daily notes regarding their break times and other on-the-job observations. Burbank testified that after he took over for Ionta on July 31, 2007, he observed interpersonal difficulties between Ward and her coworkers. Ward's coworkers complained to Burbank that Ward was constantly taking notes regarding their activities, that they felt she frequently made mistakes without consequence, and that their frustration with Ward and the resulting low morale had become so significant that some were considering leaving their employment with Empire. Burbank also observed that Ward had difficulty processing and completing patient paperwork, left patients on hold for inappropriately long periods, and failed to follow internal policies and procedures. Burbank counseled Ward concerning these issues. In light of her ongoing performance difficulties, Ward was asked in October 2007 to retake the "new hire" training session she had attended when she was first hired.

Ward does not deny the bulk of the performance issues described by Empire, and admits that Empire issued her three separate written warnings concerning her behavior and performance deficiencies. Specifically, on September 5, 2007, Burbank issued Ward a warning for insubordination after he determined that she had lied about using Empire's fax machine for personal business, which was against company policy. On November 6, 2007, Burbank issued Ward a second written warning for insubordination and unsatisfactory performance, after Ward failed to tell a patient the correct appointment time, and failed to properly complete charts for two patients prior to their appointments. On November 20, 2007, Ward was issued a final written warning for unsatisfactory work performance, insubordination, and violation of company policies, based upon five separate incidents including failure to take direction from her manager, failure to properly complete documentation, failure to properly cash out patients, and failure to pull patient charts for appointments.

Beginning December 4, 2007, Ward stopped reporting to work, claiming that she was disabled due to stress. Empire sent Ward disability forms in order to verify the basis for her absence. Ward did not respond to Empire's request for medical information, and formally resigned her position on December 26, 2007.

During her employment with Empire, Ward filed five complaints with the New York State Division of Human Rights ("NYSDHR") claiming discrimination, harassment and retaliation. The NYSDHR investigated each of the complaints and made a finding of "no probable cause." Ward filed the instant action on April 28, 2008, after receiving a "right to sue" letter from the Equal Employment Opportunity Commission.

**DISCUSSION**

**I. Summary Judgment in Discrimination Cases**

Summary judgment will be granted if the record demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). While courts should be cautious about granting summary judgment in cases where motive, intent or state of mind are at issue, a typical facet of discrimination actions, *see Montana v. First Federal Savings and Loan Ass'n of Rochester*, 869 F.2d 100, 103 (2d Cir. 1989), "the salutary purposes of summary judgment – avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to... other areas of litigation." *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.1985). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000), *quoting St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 524 (1993) (trial courts should not "treat discrimination differently from other ultimate questions of fact").

When considering a motion for summary judgment, the Court must draw inferences from underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Where the party opposing summary judgment is proceeding *pro se*, the Court must "read the pleadings ... liberally and interpret them to raise the strongest arguments that they suggest." *Corcoran v. New York Power Auth.*, 202 F.3d 530, 536 (2d Cir.1999). Nevertheless, "proceeding *pro se* does not otherwise relieve [opposing party] from the usual requirements of summary judgment." *Fitzpatrick v. N.Y. Cornell Hosp.*, No. 00-Civ.-8594(LAP),

2002 U.S. Dist. LEXIS 25166, at *5 (S.D.N.Y. Jan. 9, 2003). *See also Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 (S.D.N.Y.1980).

Ward's claims of employment discrimination are subject to the now-familiar burden-shifting analysis first articulated in *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, she must establish a *prima facie* case of discrimination by demonstrating: (1) membership in a protected class; (2) satisfactory job performance; and (3) an adverse employment action, occurring under (4) circumstances giving rise to an inference of discrimination. *See Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002). Once Ward has established a prima facie case, the burden shifts to Empire to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000). The burden then returns to Ward, to supply evidence that the legitimate, nondiscriminatory explanation offered by Empire for its conduct is a pretext, and that the conduct was actually the result of discrimination. *See St. Mary's Honor Center*, 509 U.S. 502, 508 (1993).

While granting Ward the liberal interpretation and favorable inferences due to her as a nonmovant and as a *pro se* plaintiff, I find that she has nonetheless failed to establish a *prima facie* case of discrimination, and/or to rebut Empire's legitimate, nondiscriminatory reasons for its conduct in supervising and disciplining her.

**II.    Ward's Claims**

    **A.    Ward's Disparate Treatment Claims**

Ward claims that she was discriminated against on the basis of her age and race, in that she was: (1) denied certain training; (2) issued written warnings and accused of performance issues; (3)

required to retake the new hire training class; (4) called into her manager's office on multiple occasions for performance-related counseling; (5) forced to work the front desk by herself; and (6) forced to perform certain, unidentified tasks not outlined in her union contract.

Initially, examination of each of Ward's allegations reveals that none rise to the level of an adverse employment action – that is, a "materially adverse change in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2001). The materiality of an adverse employment action "depends upon the circumstances of the particular case, and should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Kessler v. Westchester County Dep't of Social Servs.*, 2006 U.S. App. LEXIS 21530 at *26-*28 (2d Cir. 2006). Common examples of materially adverse changes include termination, demotion, or the material loss of wages, benefits, or job responsibilities. *See Galabya*, 202 F.3d 636 at 640.

While the denial of training may in some circumstances rise to the level of an adverse employment action, I find that the facts presented here do not rise to the requisite level. At her deposition, Ward admitted that she had ultimately received the training she requested – but contended that her request for that training should have been granted earlier. Regardless of whether the training was deferred or denied, it is undisputed that the training Ward sought had no impact whatsoever on the terms and conditions of her employment, was not related to the requirements of her position, would not have increased her salary or benefits, was not routinely offered to employees in her position, would not have altered her duties, and was not a prerequisite for other, advanced positions at Empire. As such, Empire's determination not to immediately grant Ward's request for

the training had no impact upon her employment, and could not have constituted an adverse employment action.

Concerning her "non-union work" claim, Ward does not specify what tasks, if any, she was forced to perform that were outside of the responsibilities specified in her union contract, nor has she offered any evidentiary support for that allegation. Accordingly, it must be dismissed.

Ward's contentions that she was forced to participate in retraining, was repeatedly called into her manager's office to discuss work-related issues as they arose, and was required to perform work at the front desk, all undisputedly describe activities that are generally required of persons in Ward's position, and/or employees experiencing performance issues. None of these activities caused or represented a change in the terms and conditions of Ward's employment, and I find that none of them even marginally approaches the level of an adverse employment action.

With respect to the three written warnings that were issued to Ward, Ward alleges that at least one of the warnings was based in part on an infraction of which she was "wrongly accused" – specifically, her failure to tell a patient the correct appointment time, which Ward contends was falsely reported to Burbank by the patient. Initially, the warnings, which were not accompanied by any change in the terms and conditions of Ward's employment, did not constitute adverse employment actions. *See Collier v. City of New York*, 2009 U.S. Dist. LEXIS 14814 at *16 (S.D.N.Y. 2009) (written warnings, without additional work-related repercussions, do not constitute adverse employment actions). *See also Martinez v. New York City Dep't of Educ.*, 2008 U.S. Dist. LEXIS 41454 at *33 n. 11 (S.D.N.Y. 2008); *Turner v. Davidson/Gilmour Pipe Supply*, 2006 U.S. Dist. LEXIS 97459 at *27 (E.D.N.Y. 2006).

Even assuming *arguendo* that the written warnings could be construed as adverse employment actions and that the appointment time incident was falsely reported to Burbank, Ward has produced no evidence to rebut Empire's legitimate, nondiscriminatory reason for its decision to issue the warnings: Ward's well-documented history of ongoing performance deficiencies, instances of insubordination, and failure to work amicably with coworkers.

In fact, with the exception disputed "appointment time" incident, Ward does not refute any of the performance problems identified by Empire: she merely questions Empire's actions in observing them. In regard to leaving patients on hold for unreasonable periods, Ward's response simply asks, "how did [Burbank] know if they were my calls on hold?" (Dkt. #67, Ward Aff. at 1). Ward does not contradict Burbank's belief that she was using the office phone and fax machine for personal purposes, but observes that "if . . . it was a personal call for me then [Burbank] should not have continued to monitor my call." *Id*. Ward does not deny that she failed to complete patient forms properly, but protests that Empire was remiss in failing to identify which patients were impacted. *Id*.

Thus, I find that regardless of whether Ward was able to demonstrate that she was subjected to an adverse employment action, she has failed to demonstrate that she was performing her position satisfactorily, and/or to rebut Empire's legitimate, non-discriminatory reasons for its conduct: to wit, Ward's poor performance, the majority of which is undisputed. *See generally Thornley v. Penton Publishing, inc.*, 104 F.3d 26, 29 (2d Cir. 1997) (satisfactory job performance is determined using the employer's criteria, and not some hypothetical objective standard); *Meiri*, 759 F.2d 989 at 995

(courts may, and often must, rely upon evaluations completed by supervisors). Ward's disparate treatment claims are therefore dismissed.

### B. Ward's Retaliation Claims

Retaliation claims are also analyzed using the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas*, 411 U.S. 792. On a motion for summary judgment, the plaintiff must first establish a *prima facie* case of retaliation. Once the plaintiff has done so, the burden shifts to the defendant to establish a legitimate, non-retaliatory basis for the complained-of action. The burden then returns to plaintiff, who must show that the legitimate, non-retaliatory reason articulated by the defendant is a mere "pretext," and that retaliation was more likely than not the reason for the complained-of action. *See Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000); *Gallagher v. Delaney*, 139 F.3d 338, 349 (2d Cir. 1998).

A plaintiff makes out a *prima facie* case of retaliation by showing: (1) her participation in a protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action. *Id.*

It is undisputed that Ward filed multiple complaints with the NYSDHR, beginning June 29, 2007, and that Empire was aware of those complaints. Excepting Ward's factual allegations of retaliatory conduct that actually predate her first NYSDHR complaint, *see e.g.*, *Brummell v. Webster Central Sch. Dist.*, 2009 U.S. Dist. LEXIS 7644 at *21 (W.D.N.Y. 2009), the retaliatory actions alleged by Ward consist of the three written warnings she received from Burbank, the fact that she was called into his office frequently to address performance issues, and the requirement that she retake the new hire training course.

As with her disparate treatment claims, Ward has failed to point to any evidence that Empire's legitimate, nondiscriminatory reason for these actions – Ward's continued inability to satisfactorily perform the requirements of her position – is pretextual, and that the true reason for those actions was retaliation. Where, as here, the only shred of evidence suggesting retaliation is the temporal relationship between the administrative complaint and the allegedly retaliatory conduct, the mere fact that the administrative complaint occurred first is insufficient to demonstrate pretext. *See Simpson v. New York State Dep't of Civil Svcs.*, 166 Fed. Appx. 499, 502 (2d Cir. 2006); *Sayed v. Hilton Hotels Corp.*, 2009 U.S. Dist. LEXIS 119483 at *26); *Tasbas v. Nicholson*, 2009 U.S. Dist. LEXIS 43877 at *54-*55 (W.D.N.Y. 2009); *Bain v. Wal-Mart Stores, Inc.*, 585 F. Supp. 2d 449, 454 (W.D.N.Y. 2008). Ward's retaliation claims are therefore dismissed.

### C. Ward's Hostile Work Environment Claim

Ward also alleges that she was subjected to a racially hostile work environment. In order to prevail on a claim of hostile work environment, Ward must demonstrate that her workplace was permeated with "discriminatory intimidation, ridicule, and insult... sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment," as well as show a specific basis for imputing the conduct that created the hostile work environment to the employer. *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). *See also Mack v. Otis Elevator Co.*, 326 F.3d 116, 122 (2d Cir. 2003); *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002).

In determining whether conduct constitutes a hostile work environment, the Court must take into account the frequency and severity of the discriminatory conduct, whether the conduct is

physically threatening or humiliating, and whether the conduct unreasonably interfered with Ward's work performance. *See Winnie v. City of Buffalo*, 2003 U.S. Dist. LEXIS 1497 at *14-*15 (W.D.N.Y. 2003), *citing Harris*, 510 U.S. 17 at 23. Additionally, in order to rise to the level of a hostile work environment, incidents must be repetitive or continuous: "isolated acts or occasional episodes will nor merit relief." *Kotcher v. Rosa & Sullivan Appliance Ctr.*, 957 F.2d 59, 62 (2d Cir. 1992).

Ward alleges that Burbank "tortured," "attacked" and "verbally abused" her by asking her questions relating to her performance of her duties, listening in on phone calls she made in the store, standing in close proximity to her when she worked at the front desk, falsely accusing her of performance problems, calling her a liar, following her throughout the store, calling her into his office to discuss performance issues, and issuing her written disciplinary warnings. She also alleges that her coworkers were unfriendly and that they attempted to make her job more difficult by hiding patient files and refusing to train her.

Assuming *arguendo* that an employer's undue scrutiny and discipline, combined with hostility by coworkers, could rise to the level of a hostile work environment, once again Ward has produced no evidence that her treatment was racially motivated. *See Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998) (Title VII is not "a general civility code" prohibiting all workplace harassment: it only pertains to harassing conduct that is motivated by a victim's protected status and that is objectively unreasonable from the perspective of a reasonable person in the plaintiff's particular position). Ward does not describe a single racially-charged comment or other

offensive communication – in fact, she does not describe any of the allegedly offensive remarks at all.

To the extent that Ward attempts to characterize her hostile work environment claim as one for sexual or age-based harassment, those claims fail for the same reason: Ward has simply failed to adduce any evidence that the conduct of which she complains rises to the requisite level, or was motivated by discriminatory motives. Her hostile work environment claim is therefore dismissed.

### D. Ward's Constructive Discharge Claim

Ward also alleges that her resignation was the result of a constructive discharge: "it became intolerable [at Empire] so I with the assistance of my Dr. [sic] decided to quit my job because I was totally stressed." (Dkt. #1 ¶19). *See also* Dkt. #67, Plaintiff's Local Rule 56.1 Statement at 1 ("I really enjoyed my position as an Optical Assistant and the Customers [sic] that I serviced were great . . . I was forced to leave because I filed a complaint of Discrimination [sic] against my employer and Empire Vision Centers, Inc. began to Retaliate [sic] against me which caused me to get very sick").

Allegations not timely raised in an administrative charge cannot form the basis for a later action in federal court. *See* 42 U.S.C. §2000e-5; *McDonnell Douglas Corp.*, 411 U.S. 792 at 798-99. It is undisputed that all of Ward's administrative complaints predated her resignation, and that none alleged any claims resembling constructive discharge, and thus she cannot assert her constructive discharge claim here.

Even if Ward had filed a timely administrative complaint concerning her alleged constructive discharge, that claim would nonetheless fail on the merits. In order to resist summary judgment on a constructive discharge claim, a plaintiff must produce evidence that her employer deliberately acted

to make her working conditions "so difficult or unpleasant that a reasonable person in [her] shoes would have felt compelled to resign." *Whidbee v. Garzarelli Food Specialities, Inc.*, 223 F.3d 62, 73 (2d Cir. 2000); *Bohen v. Potter*, 2009 U.S. Dist. LEXIS 23717 at *43 (W.D.N.Y. 2009). The only evidence offered by Ward to this end – pay stubs evidencing her high rate of attendance at work and a list of anti-depressants she was prescribed – does not suggest, let alone establish, any causal link between her working conditions and her alleged depression. Ward also offers no evidence to suggest that her working conditions were so intolerable or unpleasant that a reasonable person in her position would have suffered disabling stress, or otherwise would have been compelled to resign. Her constructive discharge claim is therefore dismissed.

**E.     Ward's NYHRL Claims**

Ward also purports to assert her claims under the NYHRL. Initially, those claims must be dismissed on the grounds that this Court lacks jurisdiction over discrimination claims brought under the NYHRL where, as here, a charge alleging the same acts was filed with the NYSDHR and dismissed on the merits with a finding of "no probable cause." *See Hughes v. Crucible Serv. Ctrs.*, 214 Fed. Appx. 85, 87 (2d Cir. 2007); *York v. Ass'n of the Bar*, 286 F.3d 122, 127 (2d Cir. 2002); *Moodie v. Federal Reserve Bank of New York*, 58 F.3d 879, 883 (2d Cir. 1995). Even if this Court did have jurisdiction over Ward's NYHRL claims, they are subject to dismissal on the same grounds as her claims arising under federal law. *See Ludwig v. Rochester Psychiatric Ctr.*, 2009 U.S. App. LEXIS 21517 at *2 n. 1 (2d Cir. 2009) (Title VII and NYHRL discrimination claims are typically treated as "analytically identical, applying the same standard of proof to both claims"); *Wanamaker*

v. *Columbian Rope Company*, 108 F.3d 462, 467 (2d Cir. 1997) (NYHRL age discrimination claims are governed by the same standards as those under the ADEA).

    F.    **Ward's Request for Additional Discovery**

In opposing Empire's motion for summary judgment, Ward generally alleges that she should be afforded the opportunity to conduct additional discovery.

In order to defeat summary judgment, a request for additional discovery pursuant to Fed. R. Civ. Proc. 56(f) must be supported by a sworn affidavit explaining: (1) the facts sought and how they are to be obtained; (2) how those facts are reasonably expected to create a genuine issue of material fact; (3) what efforts the affiant has undertaken to obtain those facts; and (4) why those efforts were unsuccessful. *See Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 302 (2d Cir. 2003); *Guary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999). Here, Ward has not submitted her request in the form of a sworn affidavit, and makes no effort to identify the facts she hopes to uncover, describe how they would create a genuine issue of material fact, or explain why she was unable to obtain the relevant materials during the regular course of discovery in this action. Accordingly, Ward's request for additional discovery is denied.

## CONCLUSION

For the foregoing reasons, Empire's motion for summary judgment (Dkt. #54) is granted and the original and supplemental complaints are dismissed in their entirety, with prejudice.

IT IS SO ORDERED.

                                      _____
                                           DAVID G. LARIMER
                                          United States District Judge

Dated: Rochester, New York
       February 18, 2010.